UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL M. STEPHAN,

                                      Plaintiff,

                                                                                         DECISION AND ORDER

                                                                                         08-CV-6439L

                      v.

WEST IRONDEQUOIT CENTRAL SCHOOL DISTRICT,

                                      Defendant.
_____

      Plaintiff Crystal M. Stephan ("Stephan") initiated the instant action against her former employer, the West Irondequoit Central School District (the "District"). Stephan, a former District cafeteria employee, alleges that she was discriminated against and subjected to a hostile work environment on the basis of disability, and ultimately terminated in retaliation for complaining about the discriminatory treatment, all in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Rehabilitation Act").

      The District now moves for summary judgment dismissing Stephan's claims (Dkt. #16). For the following reasons, the District's motion is granted.

## **DISCUSSION**

      Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although

courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

## I. Stephan's ADA/Rehabilitation Act Discrimination Claim

Plaintiff's claims of employment discrimination are subject to the burden-shifting analysis first articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) that the employer is subject to the ADA; (2) that plaintiff is disabled within the meaning of the ADA; (3) satisfactory job performance, with or without reasonable accommodations for plaintiff's disability; and (4) an adverse employment action, occurring under (5) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002); *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001). Once plaintiff has established a *prima facie* case, the burden shifts to the District to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to furnish evidence that the legitimate, nondiscriminatory reason offered by the District is a pretext. *See St. Mary's Honor Center*, 509 U.S. 502 at 508.[1]

---

[1] The elements os plaintiff's claims of discrimination in violation of the Rehabilitation
(continued...)

Initially, I find that plaintiff has failed to make a *prima facie* showing that she is a protected individual with a disability under the ADA.

For purposes of the ADA, a disabled individual is one who: (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. §12102(2). However, an impairment that "results only in mild limitations," *Baerga v. Hospital for Special Surgery*, 2003 U.S. Dist. LEXIS 17201 at *15 (S.D.N.Y. 2003), will not qualify: the impairment must significantly restrict or completely foreclose a plaintiff's performance of a major life activity. *See Reeves v. Johnson Controls, Inc.*, 140 F.3d 144, 151 (2d Cir. 1998) ("not any limitation, but only a 'substantial' limitation, of not any life activity, but only a 'major' life activity, will constitute a disability within the meaning of the statute"). *See generally* 29 C.F.R. §1630.2(j).

Plaintiff claims that she suffers from a learning disability which results in delayed processing of directions, difficulty expressing intent, understanding higher-order language, and organizing verbal output, and offers as evidence the fact that she has difficulty reading, remembering, solving problems, and performing math above a sixth-grade level. She was able to earn only an IEP ("individualized education program") diploma, and not a conventional high school diploma or GED. However, the ADA requires something more than mere diagnoses and/or educational credentials to establish a disability: it "requires those claiming the Act's protection . . . to prove a disability by offering evidence that the *extent of the limitation* . . . in terms of their own experience . . . is substantial." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).

Plaintiff offers no medical evidence regarding the specific extent to which her diagnosed conditions affect her ability to perform major life activities. She testifies from her own experience

---

¹(...continued)
Act are identical to those for her ADA claim, except for the Rehabilitation Act's more rigorous requirement that the plaintiff's disability be the sole reason – and not merely a motivating factor – for the adverse employment action. Because I find that plaintiff has failed to meet even the more lenient standards under the ADA, the Court's analysis and disposition of plaintiff's ADA and Rehabilitation Act claims is simultaneous and reaches identical results.

that her learning disability interferes with her mental acuity, such that she requires that instructions be repeated, and needs assistance with reading and mathematical computations because she cannot read or calculate above a sixth-grade level. However, difficulties with short-term memory and lack of proficiency with reading and mathematics are not uncommon among the general population, and plaintiff's description of her difficulties does not suggest that her limitations with respect to either activity are significant rather than mild. To the contrary, it is undisputed that plaintiff's performance of her job duties for the District, insofar as those duties included remembering, understanding and following instructions, reading and/or mathematics, was satisfactory. (Dkt. #7 at ¶¶6, 7). In sum, I find that the evidence proffered by plaintiff does not suggest any "significant" restriction on her ability to perform a major life activity.

Nor does plaintiff offer any evidence that she has a record of disability beyond her academic and employment histories, or that the District regarded her as disabled or unable to perform the essential functions of her job. Plaintiff offers no evidence, beyond her allegation that the District should have presupposed a learning disability based on her IEP diploma, that the District was ever informed of her alleged learning difficulties. Even if it had been, "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Reeves*, 140 F.3d 144 at 153. To the contrary, it is undisputed that the District believed that plaintiff performed the essential functions of her job well, throughout her nearly-four-year tenure, without any appreciable accommodations. (Dkt. #7 at ¶¶6, 7). *See generally Kamrowski v. Morrison Mgmt. Specialist*, 2010 U.S. Dist. LEXIS 103290 at *30-*31 (S.D.N.Y. 2010).

Furthermore, even if plaintiff were able to establish the elements of a *prima facie* case of discrimination, she has failed to rebut the District's legitimate, non-discriminatory reason for terminating her employment – her violation of the District's policy against food theft, by giving free food to a student. Significantly, plaintiff has at all times admitted that she knowingly violated the District's written policies against food theft by giving food to a friend's child without exacting

proper payment. Plaintiff contends, however, that the District should have excused her conduct, because other employees regularly engaged in food theft. Nonetheless, plaintiff testified that she never reported such activity by other employees, and offers no evidence that the District was informed of it, let alone that it treated similarly-situated employees (i.e., other employees accused of food theft) differently from plaintiff. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Plaintiff's claims of discrimination pursuant to the ADA and the Rehabilitation Act must therefore be dismissed.

## II. Stephan's ADA Retaliation Claim

Unlike the requirements for a standard disability-based discrimination claim, a plaintiff pursuing a retaliation claim need not prove that she was actually disabled within the meaning of the ADA as discussed above. Rather, she must demonstrate that: (1) she engaged in activity protected by the ADA; (2) the employer was aware of the activity; (3) an employment action adverse to the plaintiff occurred; and (4) there was a causal connection between the protected activity and the adverse employment action. *See McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2005). Protected activities include both formal and informal complaints to management, where the plaintiff has a "good faith, reasonable belief that the underlying challenged actions of the employer violated [the ADA]." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).

Plaintiff's sole claim of protected activity is her contact with the EEOC on or about January 22, 2007, describing allegedly discriminatory conduct by the District.[2] However, plaintiff offers no

---

[2] Plaintiff does not invoke her alleged verbal complaint to Food Service Director Ann Smahol ("Smahol"), which allegedly occurred some five months earlier, as protected activity. However, even if the prior complaint was considered as protected activity and moreover was sufficient to suggest a causal connection between the protected activity and the termination, as discussed above, plaintiff has offered no evidence whatsoever to rebut the District's legitimate, non-discriminatory reason for terminating her employment – a violation the District's policy against food theft to which plaintiff admits.

evidence that the District had any knowledge of this protected activity before it made the decision to terminate her employment. It is undisputed that the District's decision to terminate plaintiff's employment was made on January 19, 2007 – five days *before* the District became aware of plaintiff's letter to the EEOC. The "food theft" incidents which culminated in that determination occurred on January 16, 2007 and January 17, 2007, when a coworker reported witnessing plaintiff giving food away to a friend's child without taking payment. (Dkt. #16-2, Exhs. B, E). Two days later, Smahol indicated that she would be "terminating [plaintiff]" on Friday, January 19, 2007 on the basis of that specific conduct. (Dkt. #16-2, Exhs. C, E). However, plaintiff left work early that day, and Smahol was unable to notify her of the termination. Assistant Superintendent for Business and Personnel William Domm ("Domm") agreed to handle the termination meeting when plaintiff returned to work.

Plaintiff returned to work on Wednesday, January 24, 2007 and met with Domm. She began the meeting by presenting him with a copy of an EEOC complaint letter which she had written on Monday, January 22, 2007. (Dkt. #16-2, Exh. F). In response, Domm decided to temporarily delay plaintiff's termination and instead reassigned her to another building – a school in which none of plaintiff's friend's children were enrolled – while her complaint was investigated, in order to determine whether there was any relationship between the harassment alleged by plaintiff, and the food theft which formed the alleged basis for her termination (conduct to which plaintiff readily admits). (Dkt. #16-2 at ¶19). Although the pendency of the investigation into plaintiff's discrimination claims delayed the plaintiff's formal termination, the District's decision to terminate her employment on the grounds of food theft was a *fait accompli* before the District was ever notified of plaintiff's protected activity, and thus could not have been precipitated by plaintiff's EEOC letter. (Dkt. #19-2 at ¶¶17-22). Even if plaintiff were to argue that the District's true motive for her termination changed after her engagement in protected activity – i.e., that although the District's initial decision to terminate her employment was based on non-discriminatory, non-

retaliatory grounds, her ultimate termination was the result of retaliation – plaintiff was offered no evidence from which a jury could reasonably reach such a conclusion. In fact, the District's investigation, wherein plaintiff admitted having violated the District's food theft policy, only confirmed the grounds for the initial termination. Plaintiff's retaliation claim is therefore dismissed.

### III. Stephan's Hostile Work Environment Claim

"[T]he Second Circuit has not determined whether the ADA gives rise to a cause of action for hostile work environments." *Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 149 (D. Conn. 2008). *See also Ragusa v. Malverne Union Free Sch. Dist.*, 381 Fed. Appx. 85, 88 n. 3 (2d Cir. 2010) (declining to decide whether hostile work environment claims are available under the ADA). However, "[a]ssuming arguendo that [plaintiff]'s putative hostile work environment claim is . . . available under the ADA . . . [plaintiff's] failure to demonstrate that she is a qualified individual would defeat any such claim." *Id*. *See also Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326, 346 (E.D.N.Y. 2008). Accordingly, plaintiff's hostile work environment claim is dismissed.

### IV. Stephan's Failure to Accommodate Claim

Plaintiff claims that she requested that the District provide her with a calculator, but that the District refused to provide one (although plaintiff was permitted to bring one in herself). As a result, plaintiff contends that she was forced to rely on index card notations when computing amounts owed for food purchased by students, which were more difficult to use. This claim is dismissed: plaintiff is not disabled within the meaning of the ADA, she satisfactorily performed the requirements of her position without any "mathematical" accommodations on the part of the District, and she has made no showing that she actually required a calculator as an accommodation for disability or requested the use of one on that basis. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184-185 (2d Cir. 2006); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000).

### V. Stephan's Title VII Claim

Stephan's initial EEOC charge checked a box marked "race," however, plaintiff makes no allegation that she is a member of a protected class, or otherwise allege facts that would support any claim of race-based discrimination. To the extent that plaintiff has asserted such a claim, it is dismissed.

### CONCLUSION

For the reasons set forth above, the District's motion to dismiss (Dkt. #16) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 4, 2011.